### CHARLES M. TOWN v. JAMES A. STETSON AND MARION GRIMES.

A manufacturer cannot acquire a special property in an ordinary term or expression, as his trade-mark, the use of which as an entirety is essential to the correct and truthful designation of the particular article or compound.

Thus a dealer in salt fish cannot maintain an exclusive claim to the use of the term "desicated codfish" as a trade-mark. It is only by the prefix of some other word, not previously applied in that connection and not essential to the truthful designation of the article produced, that he can be protected in its exclusive use.

APPEAL by the plaintiff from an order made at Special Term dissolving a temporary injunction.

The action was brought by the plaintiff against the defendants for an injunction against an alleged violation of trade-mark. Both parties were dealers in salt fish, and the plaintiff claimed priority of invention of the article known as "desicated codfish," and of the use of the words on his labels, &c. These claims were denied by the defendants, who alleged that the priority of invention rested with other parties.

On the motion to dissolve the temporary injunction, the court rendered the following decision:

BARRETT, J.—The present is distinguishable from that class of cases of which *Messerole* v. *Tynberg* (4 Abb. Pr. N. S. 410) and *Newman* v. *Alvord* (49 Barb. 588) are the most recent as

well as the most distinctively advanced in principle, in this, that the popular word " desicated," here sought to be burdened with a new and exclusive use, is specially descriptive of the article sold; in fact it is the only word which correctly describes the process whereby this particular preparation of codfish is produced.

No manufacturer can acquire a special property in an ordinary term or expression, the use of which, as an entirety, is essential to the correct and truthful designation of a particular article or compound. The courts have gone a long way and with plain justice in protecting the honest and enterprising manufacturer of any good and useful article from the unscrupulous pirating of his special reputation; but they have been equally careful to prevent any attempted monopoly of that which is common to all (*Corwin* v. *Daly*, 7 Bosw. 222; *Bininger* v. *Wattles*, 28 How. Pr. 206; *Wolfe* v. *Goulard*, 18 Id. 64; *Amoskeag Manufacturing Co.* v. *Spear*, 2 Sandf. 599; *Brooklyn White Lead Co.* v. *Masury*, 25 Barb. 417; *Burgess* v. *Burgess*, 17 Eng. L. & Eq. 257; *Perry* v. *Truefitt*, 6 Beav. 66; *Singleton* v. *Bolton*, 3 Doug. 293; *Millington* v. *Fox*, 3 Mylne & Cr. 338).

Here each party has as much right to desicate codfish as he has to dry or preserve fruits or to pickle or spice oysters and salmon; and it is a sequence to this right that he may sell the article thus produced under the designation which is strictly appropriate to the altered or modified condition of the principal ingredient.

Indeed the use of such designation is in my judgment a moral obligation upon the manufacturer, for to desicate codfish and then sell it as a preparation produced by other means, would be a concealment of fact and a species of trade charlatanism.

The court will certainly neither prevent people from calling things by their right names nor force a misnomer upon them. The plaintiff may distinguish his " desicated codfish " as the " Bismarck " (see *Messerole* v. *Tynberg*, *supra*) or the " Von Beust," or by the prefix of any other proper name or common word not previously applied in that connection and not essen-

tial to the truthful designation of the article produced, and he will be protected in its exclusive use. But he can no more acquire a special property in the word " desicated," as applicable to an article that has undergone that process, than he can to the words " dried," " preserved," or " pickled," as applied to that which has in fact been thus treated.

It should be added that no attempt has been made to deceive the public or to palm off the defendants' desicated codfish as that of the plaintiff's manufacture. On the contrary, pains seem to have been taken to render the two articles as dissimilar as possible, The one is put up in boxes, the other in packages; the labels are of opposite colors and designs, and the types of different sizes, and the reading matter varied; while for the codfish which is engraved upon the plaintiff's label, and which constitutes, as indeed the stamp expressly indicates, his real " trade-mark," the defendants have substituted something which bears a feeble resemblance to a soft-shell crab. No purchaser can mistake the one preparation for the other, and the defendants' intention is perfectly clear. It is while using the word desicated, as we have seen, their right to sell the article produced of their own and not of the plaintiff's desication.

The motion to dissolve the injunction must therefore be granted.

From this decision the plaintiff appealed to the General Term of this court.

*Stewart, Ritch & Woodford,* for appellant.

*Gilbert & Smedley,* for respondents.

By THE COURT.—BRADY, J.—The plaintiff in this case did not rely upon the words " desicated codfish " as the distinguishing symbol for his manufacture. If he had done so, it would be necessary, in order to sustain the ruling at special term, to show that there was a difference between the plaintiff's trademark and that which was upheld in *Messerole* v. *Tynberg,* decided in this court. The plaintiff, as appears from the labels employed by him, used the words " desicated codfish " to de-

scribe the article of merchandise which he offered for sale. The word " desicated " implied that in his preparation of codfish it was deprived of moisture, but in what manner and with what advantages, are not stated on the labels. This is apparent from the fact that the label exhibits the letter C with a fish traversing it, on which is printed, " Trade-mark," and that is his trade-mark, in the use of which he would be protected. But as already stated, he has not relied upon the words " desicated codfish " exclusively, and these words are the only appropriation which the defendants have made of any valuable part of the plaintiff's label. The defendants have adopted a trade-mark and a label different from that of the plaintiff both in design and color. It also appears that the word " desicated " had been used prior to its employment by the plaintiff, to designate various animal and vegetable substances, by William J. Rand, under whose authority the defendants are manufacturing, and that he had desicated fish, although it does not appear that he had, or that the defendants or any other person had, publicly used the word in reference to codfish prior to the plaintiff. Although the word itself is one in which no person could have an exclusive property, yet the application of it to a particular manufacture, might have created in reference to such manufacture an exclusive proprietorship, but it could not be acquired unless the words alone were employed to accomplish the reputation and value of the manufacture, and succeeded in doing so. If any other symbol be employed, which, with the words used, constitute the trade-mark, the words cannot be said to have the object suggested, and must be regarded as indicating quality, description, or process, as the case may be. I think, for these reasons, that the order should be affirmed.

Order affirmed.